**E-FILED**
Thursday, 24 March, 2016  01:37:10 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN L. ADAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 12-3245 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

Kevin Adams has filed a Motion under 28 U.S.C. § 2255 to Vacate,
Set Aside or Correct Sentence.

The Court has reviewed the Motion and his Memorandum in
Support, the Government's Response and the Petitioner's Reply. The
Court has also considered the testimony and evidence from the evidentiary
hearings conducted on November 18, 2015 and December 2, 2015. The
Petitioner was represented at the evidentiary hearing by Attorneys James
E. Elmore and Mark Kevin Wykoff.

I.

Petitioner Kevin L. Adams entered pleas of guilty to three counts of the Indictment, which charged possession with the intent to distribute crack. See United States v. Kevin L. Adams, Case No. 3:10-cr-30086-RM-TSH. The Petitioner was sentenced to serve 240 months' imprisonment on each of Counts 1, 2 and 3, to run concurrently. In his motion seeking relief under § 2255, the Petitioner alleges he received ineffective assistance of counsel during the sentencing phase.

The Petitioner was initially represented by Attorney Monroe McWard, who was appointed pursuant to the Criminal Justice Act. Although his pro se motion to terminate appointed counsel was denied, the Petitioner retained Attorney Paul Sims soon thereafter. Mr. Sims represented the Petitioner at all times relevant to this § 2255 motion.

The Petitioner contends that, but for counsel's deficient performance, he would have received a lighter sentence. Specifically, the Petitioner received a 2-point enhancement as a result of an objection to the initial Presentence Investigation Report (PSR). The 2-point enhancement,

pursuant to § 2D1.1(b)(12), was based on the allegation that Petitioner maintained a premises for the purpose of manufacturing or distributing a controlled substance.  This enhancement was not included in the initial PSR.  It was added after the Petitioner's counsel filed an objection to paragraph 16 of the PSR, claiming that the Petitioner did not reside at the residence where the illicit substances were recovered, but "only stored some property at the house searched."  See Doc. No. 1, Ex. 2.

The Government also objected to the initial PSR on the basis that the enhancement was not included in calculating the Petitioner's guideline range.  Because of the Petitioner's access to the home and his admission that he stored property there, the Government believed a 2-point enhancement was appropriate.

The Petitioner contends that, based on this objection to the PSR, counsel factually admitted to the Government that Petitioner "maintained a premises for the purpose of manufacturing or distributing a controlled substances" pursuant to § 2D1.1(b)(12).  Paragraph 31 of the Revised PSR, dated August 24, 2011, includes the 2-point enhancement for maintaining

a drug house.  This admission was made while counsel was attempting to challenge a 2-point firearm enhancement.  Although the Petitioner had admitted during his plea colloquy that he kept drugs at the residence, the 2-point enhancement was not initially imposed.

At the Petitioner's change of plea hearing, counsel also advised that Petitioner would be challenging the firearm enhancement at sentencing.

The Petitioner's guideline range was calculated to be 235-293 months.  Prior to the enhancement, as stated in the initial PSR dated August 1, 2011, his guideline range was determined to be 188-235 months.  The Government claimed that if the Petitioner continued to persist in the "frivolous objection" to the firearm enhancement, he should also lose the 3-level reduction for acceptance of responsibility.

The Government reiterated this position at the beginning of the sentencing hearing.  The Court inquired of counsel as to whether the Petitioner continued to challenge the firearm enhancement.  Counsel stated that he had discussed the matter with the Petitioner, who adhered to his objection.  The Court inquired directly of the Petitioner, who stated that

he wished to proceed with the objections.

Ultimately, the Petitioner lost his 3-level reduction for acceptance of responsibility, resulting in a guideline range of 324-405 months. The 240-month sentence, while 84 months below the low end of the applicable guideline range, was 52 months above the low end of the guideline range that was initially calculated before counsel challenged the firearm enhancement. The Petitioner did not appeal.

The Petitioner contends that counsel's objections fell below the normal standard of competence expected of a federal criminal practitioner. Moreover, the Petitioner was significantly prejudiced, given his exposure to a significantly higher sentencing guideline range.

The Government asserts counsel's decision was a tactical decision that does not support an ineffective assistance of counsel claim. From the outset of the case, the Petitioner alleged he lived on South 15th Street in Springfield, Illinois, and evidence developed that he maintained a residence on Catherine Lane where he stored drugs. During the plea colloquy, the Petitioner admitted to Judge Cudmore that he stored drugs at the Catherine

Lane home in order to make money.

In his objections to the PSR, counsel stated that other members of his family stored items at the Catherine Lane residence.  At sentencing, counsel claimed that no evidence connected the Petitioner to the firearms.  The implication was that the guns belonged to someone else who also stored property at the residence.

## II.

The Court heard testimony from four witnesses at the evidentiary hearing.[1]  The Petitioner's mother, Linda Adams, was the first witness. Neither Ms. Adams nor the Petitioner thought highly of her son's appointed attorney, Monroe McWard, and wanted to find another lawyer. The Petitioner testified he asked Mr. McWard about relevant conduct.  He was concerned that he was being held accountable for higher drug amounts than were alleged in the Indictment.  The Petitioner testified that because Mr. McWard was an appointed lawyer, he did not think that counsel would adequately represent his interests.

---

[1]Although there is no transcript of the evidentiary hearing on file, the Court has listened to the recording and also relies on its notes.

6

Linda Adams heard from another son that a friend of his knew a paralegal in the St. Louis area who had "beat a federal case." Ms. Adams met with the paralegal, Michael Grady, at a casino and agreed to hire him and the attorney with whom he worked. The attorney, Paul Sims, was not present at the initial meeting. Ms. Adams made a partial payment on the day of the meeting and a subsequent payment the following month at counsel's office.

Attorney Paul Sims testified that although the Petitioner wanted to plead guilty, he wanted a lawyer who would not "roll over" for the Government. The Petitioner and his family were looking for someone who was "willing to fight." Mr. Sims testified that he advised the Petitioner he could cooperate with the Government. However, the Petitioner did not want to cooperate. Mr. Sims testified that he attempted to negotiate with the Government. Mr. Sims told the Petitioner he was "rolling big dice." Mr. Sims believed the Petitioner's best course was to enter a blind plea and they could then challenge certain evidence at sentencing.

Linda Adams testified that she dealt primarily with Mr. Grady. The

7

Petitioner testified he believed he had retained Mr. Grady, even though Mr. Grady was not a licensed attorney. Ms. Adams testified Mr. Grady told the Petitioner that he would take care of everything and Mr. Sims was his "mouthpiece" in court. Although the Petitioner faced a mandatory minimum sentence of ten years, Linda Adams testified Mr. Grady told her that Petitioner would get between five and ten years because of changes in the crack cocaine sentencing guidelines. Moreover, Mr. Grady told her not to worry about relevant conduct.

The Petitioner testified he never met Mr. Grady and only spoke to him by telephone. Mr. Sims testified he did not have a close relationship with Mr. Grady. Mr. Grady was a paralegal that he knew.

The Petitioner was advised by Mr. Grady to enter an open plea so that issues as to relevant conduct would not be waived. The Petitioner testified Mr. Grady told him that the Government could only prove those allegations that were in the Indictment. Thus, he believed he could not be held accountable for additional drug amounts or for a gun enhancement. Initially, the Petitioner thought those matters would be addressed when he

8

entered his open plea.  Mr. Grady told the Petitioner he did not think the

enhancements would apply.   Mr. Sims stated they would make some

objections to the PSR.  The Petitioner testified he was not concerned about

the firearm enhancement.  His primary concern was the weight of the drugs.

The Petitioner testified he felt good about the objections drafted by Mr.

Sims and Mr. Grady.

    The Petitioner testified that Mr. Grady told him he felt their

objections were strong and the Petitioner would ultimately receive a

sentence of seven to ten years.  The Petitioner testified that he received the

Government's sentencing commentary, which mentioned that he could lose

credit for acceptance of responsibility if he continued to persist in objecting

to the gun enhancement.   Although the Petitioner was concerned, Mr.

Grady told him these were "scare tactics" that the Government used so that

defendants would not contest matters.   The Petitioner testified he was

worried but trusted the advice he was receiving.  Moreover, Mr. Sims never

expressed any concern about losing credit for acceptance of responsibility.

    At the evidentiary hearing, the Petitioner admitted storing drugs at

the residence on Catherine Lane.  The Petitioner denied that the guns were his.  He testified he did not know who owned the guns found in close proximity to the drugs.  The Petitioner testified he never saw the guns at the residence.  The testimony is consistent with what the Defendant said at the plea hearing.  He agreed with Mr. Sims's statement at the plea hearing that they would be contesting the guns.

The Petitioner testified that had he known then what he knows now about losing credit for acceptance of responsibility, he would not have objected to the gun enhancement at sentencing.  He denied owning the guns.  The Petitioner agreed with Mr. Sims's initial objection.  The Petitioner testified that he essentially went along with Mr. Sims's objections because he thought Mr. Sims knew better.  Mr. Sims testified that all of the information contained in the objections came from the Petitioner.  Mr. Sims stated he did not believe the Petitioner's challenges were inconsistent with acceptance of responsibility.

Paul Sims testified that he told the Petitioner that the Government would ask that the Petitioner not get credit for acceptance of responsibility

if he persisted with the objections.  However, the Petitioner wanted to go forward with the objections.  Mr. Sims advised the Government via email that Petitioner was not willing to withdraw the objections.

The Petitioner testified that he continued to agree with counsel's tactics at his sentencing hearing.  Upon knowing the consequences, the Petitioner wishes he would have taken responsibility for the items found at the Catherine Lane residence.

The probation officer testified that after receiving counsel's objection to the initial PSR–that Petitioner did not live at the Catherine Lane residence and merely stored property there–the enhancement was added for maintaining a premises for manufacturing or distributing drugs.  However, the enhancement would have been added anyway based on the Government's objection.

The probation officer stated she believed Mr. Sims's advocacy was below the level of most attorneys she had observed.  She testified that Mr. Sims appeared to have difficulty understanding that Petitioner could be held responsible for a firearm when he had not been charged with a firearm

offense.  It was the probation officer's belief that Mr. Sims did not totally understand the basis of the enhancement.

Paul Sims testified he believed that the Petitioner did not deserve a 240-month sentence.  However, Mr. Sims would have not done anything differently.  He believed that the Petitioner met his burden in challenging the gun enhancement.  The Petitioner adhered to his position that he wanted to contest the enhancements.

III.

(A)

The Petitioner's challenge to the gun enhancement was that no evidence connected him to the firearms and they must have belonged to someone else who stored property at the residence.  This is true even though the Petitioner admitted that the drugs were his.

This was not a strong argument because, as the Government noted, once it met its initial burden, the Petitioner had the burden of producing evidence that the firearm was not connected to his drug dealing activities.  The application note, § 2D1.1(b)(1), provides that if the Government

shows by a preponderance of the evidence that a defendant possessed the firearm, then the defendant must show it was "clearly improbable" that the gun was connected with the offense.  See United States v. Corral, 324 F.3d 866, 872 (7th Cir. 2003).  The Government need not prove actual possession; proof of constructive possession is sufficient to warrant the enhancement.  See United States v. Thomas, 294 F.3d 899, 906 (7th Cir. 2002).  Thus, the defendant must have the power and intention to exercise control of the firearm in order for the enhancement to apply.  See id.

"[G]uns found in close proximity to drug activity are presumptively connected to that activity."  Corral, 324 F.3d at 873.  The enhancement can apply even if the connection between the guns and drugs is "temporal in nature."  See id.  Because of this presumption, when a gun and drugs are found at the same residence, therefore, a defendant must meet a high standard in order for the enhancement not to apply.

The Government alleges the Petitioner's challenge to the firearm enhancement was a tactical decision that was not unreasonable. Additionally, the Government disputes that counsel made this objection

without discussing it with the Petitioner.

(B)

A petitioner asserting an ineffective assistance of counsel claim must show that counsel's performance was objectively deficient and this lack of competent representation resulted in prejudice.  See United States v. Jones, 635 F.3d 909, 915 (7th Cir. 2011) (citing Strickland v. Washington, 466 U.S. 668, 687-96 (1993)).  To show prejudice, the petitioner must show there is a reasonable probability that but for counsel's mistakes below, the result of the proceedings would have been different.  See id.  Because of the general rule that arguments based on the Sentencing Guidelines must be raised on direct appeal, "only Sentencing Guidelines errors of constitutional proportion are considered on collateral review."  See Allen v. United States, 175 F.3d 560, 563 (7th Cir. 1999).

"In the sentencing context, an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective sentence entitling the defendant to relief."  Jones, 635 F.3d at 916.  The

14

argument here is that counsel's actions, or blunders, during the sentencing phase contributed to a longer advisory guideline range which, the Petitioner believes, ultimately led to a more lengthy sentence.

The Petitioner contends that counsel's post-plea admission of the drug premises enhancement–which was not otherwise sought–resulted in exposure to a potential sentence that was approximately four years longer. However, the probation officer testified that the omission of the enhancement in the initial PSR was an oversight on her part.  Moreover, the Government objected to the initial PSR on the basis that it did not include an enhancement for maintaining a drug premises.

Even if the Government's objection was triggered by Mr. Sims's objection to the Catherine Lane property as the Petitioner's residence on the basis that he "only stored some property at the house," the Petitioner had admitted during his plea hearing that he stored drugs at the residence. It was part of the record and, even if counsel's admission was foolish, the Petitioner was not prejudiced.

The objection to the firearm enhancement without the presentation

of any evidence was destined to fail given that a defendant must show it is "clearly improbable" that the weapons were connected to the drugs. A bare denial will not do, as the Court admonished the Petitioner's counsel in stating, "[Y]ou put on no evidence whatsoever . . . [o]nly the Government put on evidence." Transcript of Sentencing Hearing, at 65. The Court further stated, "We've had no testimony from you, from any witness, or from the defendant." Id. Eventually, the Petitioner lost credit for acceptance of responsibility and his guideline range, which was first calculated at 188-235 months, was determined to be 324-405 months.

Attorney Paul Sims testified the Petitioner wanted to go forward with the objection. "Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy . . . that strategy cannot later form the basis of a claim of ineffective assistance of counsel." United States v. Weaver, 882 F.2d 1128, 1140 (7th Cir. 1989). The Government contends it is apparent that the Petitioner concurred with counsel's strategy.

Even after being warned at the sentencing hearing that he could lose

16

credit for acceptance of responsibility if he persisted with objections, the Petitioner reiterated that he wanted to go forward with the objection to the gun enhancement.  He was aware of the consequences.  This is consistent with the Petitioner's actions from the beginning of the case.  A reasonable inference from the record is that Petitioner wanted a lawyer other than Attorney McWard because he wanted someone who would "fight" for him.

The Petitioner's objection to the firearm enhancement without having presented any evidence was a poor tactical decision.  Based on the legal standard, the objection was highly unlikely to succeed by simply cross-examining Government witnesses and denying a connection to the guns. If he had not objected, the Petitioner would not have lost credit for acceptance of responsibility.  The Petitioner's advisory guideline range would have remained at 235 to 293 months, instead of 324 to 405 months once he lost the 3-level reduction.

As stated earlier, Paul Sims testified that he advised the Petitioner he was "rolling big dice" in challenging the enhancements.  There is evidence in the record that–even at the evidentiary hearing–Mr. Sims did not fully

17

appreciate a defendant's high burden in challenging the sentencing factors. Obviously, the Court cannot know for certain what advice Mr. Sims gave the Petitioner.  There is little question that the Petitioner should have withdrawn the objections if he had no evidence to offer.

However, the Court concludes that Petitioner was not prejudiced by counsel's poor advice.  Although the Petitioner faced a guideline range of 324 to 405 months after his objections, the Petitioner was not prejudiced by counsel's advice.

The Court is required to accurately calculate a defendant's guideline range.  Because the Petitioner had acted in a manner inconsistent with acceptance of responsibility, the Court determined it was appropriate to remove the 3-level reduction.  Thus, the decision not to withdraw the objections did lead to a significantly higher guideline range.

The record suggests that Petitioner was dissatisfied with Mr. McWard and wanted an attorney who would fight for him and not make concessions to the Government.  That is not always the best course.  However, the Court did not hold the Petitioner accountable for any poor advice of

counsel.

Although a significantly higher guideline range was calculated, the Petitioner's sentence of 240 months was <u>seven years</u> below the low end of the revised  guideline range.  It was near the low end of what would have been the advisory guideline range if the Petitioner did not lose credit for acceptance of responsibility.  The Petitioner has not shown that <u>but for</u> any mistakes by counsel, the result at sentencing would have been different.  This was not an error of constitutional proportion.  Accordingly, the Court concludes that the Petitioner cannot show prejudice and his ineffective assistance of counsel claim must fail.

## IV.

For the foregoing reasons, the Court concludes that the Petitioner's ineffective assistance of counsel claim does not warrant relief under § 2255.

An appeal may be taken if the Court issues a certificate of appealability.  See 28 U.S.C. § 2253(c)(1)(A).  Because the Petitioner has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of

appealability under Rule 11 of the Rules Governing Section 2255 Proceedings.

_Ergo_, the Motion under 28 U.S.C. § 2255 of Kevin L. Adams to Vacate, Set Aside or Correct Sentence [d/e 1] is DENIED.

The Court declines to issue a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings.

The Petitioner's Pro Se Motion for Transcripts of the Evidentiary Hearing [d/e 12] is DENIED.  Because transcripts have not been filed in this case, the Petitioner may contact Court Reporter Kathy Sullivan to inquire about obtaining a transcript.

The Clerk will terminate this case.

ENTER: March 24, 2016

FOR THE COURT:

s/Richard Mills

Richard Mills
United States District Judge